SNACK CENTER INC., demandada y recurrente, *v.* JAIME ESCANELLAS, demandante y recurrido.

*Número:* O-74-1    *Resuelto:* 14 de octubre de 1975

*Rodolfo Gluck,* abogado de la recurrente; *Jaime Escanellas, pro se.*

EL JUEZ ASOCIADO SEÑOR RIGAU emitió la opinión del Tribunal.

El Tribunal de Distrito declaró sin lugar una demanda mediante la cual se trató de recobrar daños sufridos por un automóvil mientras estaba estacionado en el área de aparcamiento del Estadio Municipal Hiram Bithorn. Su dueño fue al estadio a ver un juego de pelota. Pagó 25 centavos por la entrada del automóvil a los terrenos del estadio. La demandada opera u operaba para la fecha de los hechos una cantina que era una concesión comercial del estadio. El negocio real y principal de la demandada era la operación de la cantina. Debido a que el Estadio Municipal de San Juan subastó conjuntamente la cantina y el área de aparcamiento, sin que permitiera licitar por la cantina solamente, sin que se incluyese el área de aparcamiento, la demandada tuvo que hacerse cargo del aparcamiento como una actividad accesoria a la suya.

Este caso es muy parecido a los casos de *Merced* v. *Adm.*

*de Parques,* 103 D.P.R. 574 (1975) y *Guzmán* v. *San Juan Racing Assoc., Inc.,* 104 D.P.R. 120 (1975).

■ Por tratarse en este caso de una operación de aparcamiento que no constituía el verdadero lucrativo negocio de la demandada, sino que era uno accesorio a su negocio principal y por haberle sido impuesto como condición para operar el negocio principal, resolvemos que no estaba cubierto por la Ley Núm. 107 de 27 de junio de 1964 (23 L.P.R.A. sec. 801 y ss.), que era la vigente a la fecha de los hechos. Hoy, como se sabe, la ley vigente es la Núm. 120 de 7 de junio de 1973 (23 L.P.R.A. sec. 805 y ss.).

■ Debemos advertir dos cosas, que esta decisión y las de *Merced* v. *Adm. de Parques* supra, y *Guzmán* v. *San Juan Racing Assoc., Inc.,* supra, no constituyen un cheque en blanco para los operadores de aparcamientos. Primero, si un negocio cualquiera opera colateralmente un negocio de aparcamiento y cobra por ese servicio por lo menos el mínimo fijado por el Gobierno, mediante la oficina correspondiente, para los negocios de aparcamiento propiamente dichos, entonces se entenderá que el negocio de aparcamiento, aunque se le denomine o se le haga aparecer como accesorio, se considerará también un negocio de aparcamiento separado e independiente de la operación que sirve.

■ Segundo, esta decisión tampoco quiere decir que los operadores de solares o edificios de aparcamiento, en donde se cobra dinero, aunque la suma sea nominal, pueden desentenderse totalmente de la seguridad en dichos aparcamientos. Es necesario tener una vigilancia razonable y muy especialmente, cuando se celebran actividades y concurren a esos lugares muchas personas y muchos automóviles. Declaró el Sr. Roberto González Seijo, presidente y administrador de la demandada, que al concluir los espectáculos públicos en el Parque Hiram Bithorn "los carros salen a tropel." Los que hemos asistido a espectáculos a dicho parque podemos tomar conocimiento de esa

triste y cruda realidad. Poner orden a la salida de los vehículos de motor es responsabilidad de los operadores del Parque Hiram Bithorn y de la policía. En una ocasión oportuna resolveremos si los operadores del Parque Hiram Bithorn tienen responsabilidad civil por daños sufridos por vehículos de motor y por personas en esas salidas de estampida toleradas a ciencia y paciencia de dichos operadores.

En vista de lo antes dicho, *se revocará la sentencia del Tribunal Superior que impuso responsabilidad civil a la demandada y quedará en pleno vigor la sentencia del Tribunal de Distrito que declaró la demanda sin lugar.*

Para un caso en que se sostuvo la responsabilidad civil, véase *Flores* v. *Meyers Bros. of P.R. Inc.*, 101 D.P.R. 689 (1973).

Los Jueces Asociados Señores Torres Rigual y Martín no intervinieron. El Juez Asociado Señor Negrón García concurre en el resultado.