# 2001 DTA 144

## TRIBUNAL DE CIRCUITO DE APELACIONES
## CIRCUITO REGIONAL V DE PONCE Y AIBONITO

MARIBEL GUTIERREZ PAGAN Y AIDA PAGAN DE GUTIERREZ
Apeladas

v.

PONTIFICIA UNIVERSIDAD CATOLICA, ASEGURADORA PRAICO Y
DO ALL SECURITY SERVICES
Apelantes

Núm. KLAN-00-00611

San Juan, Puerto Rico, a 10 de abril de 2001

Panel integrado por su Presidente, el Juez Brau Ramírez,
y los Jueces González Rivera y Ortiz Carrión

Brau Ramírez, Juez Ponente

## TEXTO COMPLETO DE LA SENTENCIA

### I

La parte apelante, Pontificia Universidad Católica de Puerto Rico ("*Universidad Católica*"), recurre de una sentencia emitida el 18 de abril de 2000 por el Tribunal de Primera Instancia, Subsección de Distrito, Sala de Ponce, que declaró con lugar la demanda por daños y perjuicios presentada contra la Universidad Católica por las apeladas, Maribel Gutiérrez Pagán y Aida Pagán de Gutiérrez.

La demanda estaba relacionada al robo del estacionamiento de la Universidad Católica de un vehículo de motor perteneciente a las apeladas, ocurrido el 23 de marzo de 1994. El Tribunal condenó a la apelante a pagar a las apeladas la suma de $4,917.00 por concepto de pérdidas al vehículo, más $10,000.00 por otros daños económicos y angustias mentales. El Tribunal, además, impuso una condena a la apelante de $3,000.00 por concepto de honorarios de abogado, por temeridad.

Revocamos.

### II

Según se desprende del récord, la Universidad Católica es una institución educativa superior privada, con recinto principal en la ciudad de Ponce.

Para el semestre universitario de enero a mayo de 1994, la apelada Maribel Gutiérrez Pagán era estudiante en el recinto de Ponce de la Universidad Católica, en el programa nocturno. Para asistir a sus clases, la apelada se transportaba en un vehículo de motor Mitsubishi Mirage de 1986, perteneciente a su madre, la apelada Aida Pagán de Gutiérrez.

La apelada Aida Pagán de Gutiérrez utilizaba el mencionado vehículo de día para transportarse a su trabajo y su hija lo utilizaba de noche para ir a sus clases en la Universidad.

La parte apelada tenía acceso al estacionamiento de la Universidad Católica, por lo cual dicha entidad cobraba $10.00 por año a sus estudiantes, expidiéndoles un boleto ("*sticker*") de autorización para estacionarse dentro del recinto.

La solicitud firmada por la apelada Maribel Gutiérrez Pagán refleja que dicho permiso le fue otorgado en su calidad de estudiante de la institución y que el mismo se le concedió como "*un privilegio, no un derecho.*" La solicitud indicaba que la apelada asumía "*todos los riesgos*" por estacionar en el recinto y que "*la Pontificia Universidad Católica de Puerto Rico no asume responsabilidad alguna, incluyendo protección, robo o vandalismo o cualquier daño, no importa la índole, mientras mi vehículo se encuentra en el Campus.*"

El área de estacionamiento pertenece y está bajo el control de la Universidad Católica. La misma tiene cuatro (4) portones de acceso. Para el semestre universitario de enero a mayo de 1994, la apelante había subcontratado a la firma de guardias de seguridad *"Do All Security Services, Inc."* (*"Do All"*) para prestar servicios de vigilancia en dicho estacionamiento.

Para la fecha de los hechos, el recinto de Ponce de la Universidad Católica contaba con alrededor de 8,000 estudiantes. La guardia universitaria estaba compuesta por 6 a 7 guardias en horario de 7:00 a.m. a 3:00 p.m. Luego de las 5:00 p.m. se cerraban dos de los portones de acceso al recinto. A esa hora, se reducía el personal de guardia, pero se mantenían las rondas en motoras.

El día 23 de marzo de 1994, la apelada Maribel Gutiérrez Pagán llegó a la Universidad a tomar sus cursos. La apelada se estacionó en un espacio al lado de la cabina del guardia y se fue a tomar su clase. Dejó su automóvil cerrado.

Al terminar sus clases, la apelada se dirigió de nuevo al estacionamiento. Al llegar, se percató de que su vehículo no estaba. La apelada notificó al Guardia de Seguridad de Do All y a los oficiales de la Universidad, quienes no pudieron dar cuenta del paradero del vehículo.

La Policía de Puerto Rico fue notificada de que habían hurtado el automóvil del estacionamiento, asignándose el correspondiente número de querella. El vehículo fue recuperado por la Policía un día después. El mismo había sido vandalizado. Las apeladas incurrieron en gastos de $4,917.00 por concepto de piezas y mecánica para reparar el mismo.

Alegadamente, como consecuencia del hurto del vehículo, la apelada Maribel Gutiérrez Pagán no pudo seguir asistiendo a su clase, por lo cual tuvo una calificación de F al final del semestre. La Sra. Pagán de Gutiérrez también sufrió pérdidas por la pérdida de uso del automóvil.

Oportunamente, las apeladas instaron la presente demanda contra la Universidad Católica y Do All, así como contra la compañía aseguradora de la primera (Pan American Insurance Company), solicitando compensación por los daños ocasionados. Solicitaron $4,917.00 por los gastos incurridos para reparar el vehículo, más $10,000.00 por la pérdida de uso, molestias y otros daños.

Las partes demandadas contestaron la demanda, negando las alegaciones. Oportunamente, la reclamación contra la compañía aseguradora de la Universidad Católica fue desestimada, al concluir el Tribunal que, bajo los términos de su póliza, dicha entidad no tenía responsabilidad por los hechos alegados.

Luego de otros incidentes, el 16 de febrero de 2000, se celebró la vista en su fondo del caso. Testificaron la apelada Maribel Gutiérrez Pagán, quien declaró sobre el robo del vehículo, y el Sr. Dionisio González, Jefe de Seguridad de la Universidad Católica para la fecha de los hechos, quien testificó sobre los detalles de la vigilancia ofrecida al estacionamiento. La parte apelada presentó, además, varios recibos sobre los costos de reparación del vehículo y la querella sobre el robo del vehículo. Las partes también sometieron por estipulación la solicitud de permiso de acceso firmada por la apelada Maribel Gutiérrez Pagán.

Esta fue la única prueba presentada.

El 18 de abril de 2000, mediante la sentencia apelada, el Tribunal de Primera Instancia declaró con lugar la demanda.

En su sentencia, el Tribunal concluyó que la Universidad Católica estaba cubierta por la Ley Para Regular el Negocio de Areas Para el Estacionamiento Público de Vehículos de Motor, 23 L.P.R.A. secs. 805 y ss., la cual le requería mantener un seguro para cubrir pérdidas por hurto de su estacionamiento, 23 L.P.R.A. sec. 809.

Concluyó que la Universidad constituia un negocio operado con ánimo indirecto de lucro.

El Tribunal también determinó que había mediado negligencia en el cuidado ofrecido por la apelante y Do All, "*máxime cuando el vehículo de la co-demandante estaba estacionado frente a la cabina del guardia de seguridad.*"

El Tribunal concedió a las apeladas la compensación total solicitada de $14,917.00. Impuso, además, una condena de $3,000.00 a las partes demandadas, por concepto de honorarios de abogado, por temeridad.

Insatisfecha, la Universidad Católica acudió ante este Tribunal.

### III

En su recurso, la Universidad Católica plantea que erró el Tribunal al concluir que la Universidad está cubierta por la referida Ley Para Regular el Negocio de Areas Para el Estacionamiento Público de Vehículos de Motor. También cuestiona la conclusión del Tribunal de que la apelante fue negligente, su evaluación de los daños y la imposición de la condena de honorarios de abogado por temeridad.

La mencionada Ley Para Regular el Negocio de Areas Para el Estacionamiento Público de Vehículos de Motor, 23 L.P.R.A. secs. 805 y ss., establece un detallado esquema reglamentario para gobernar este tipo de negocios en Puerto Rico.

La Ley requiere que los operadores de estacionamientos obtengan la licencia correspondiente para poder operar, 23 L.P.R.A. sec. 808, y que mantengan seguros de responsabilidad pública y por pérdidas ocasionadas por hurto, fuego, explosión y colisión. 23 L.P.R.A. sec. 809.

Se concede autoridad al Secretario del Departamento de Asuntos del Consumidor ("*D.A.C.O.*") para establecer las tarifas a ser cobradas, llevar a cabo inspecciones e investigaciones de dichos negocios y efectuar otros trámites de fiscalización, adoptando la reglamentación correspondiente para lo anterior. 23 L.P.R.A. sec. 807; véase, el Reglamento Núm. 5857 adoptado por dicho funcionario el 16 de septiembre de 1998.

La Ley confiere jurisdicción primaria exclusiva al D.A.C.O. para atender querellas presentadas por los usuarios de los estacionamientos relacionadas con el cobro indebido de tarifas o por daños sufridos a sus vehículos. 23 L.P.R.A. sec. 812; *Aguilú Delgado v. P.R. Parking System,* 122 D.P.R. 261, 267 (1988); *P.R. Parking Corp. v. ASERCO*, 103 D.P.R. 65, 67 (1974); véase, además, *P.R. Amer. Ins. Co. v. P.R. Park System,* 108 D.P.R. 106, 111 (1978).

Ahora bien, la Ley no cubre todo tipo de estacionamientos, sino aquéllos dedicados al negocio de estacionamiento público. Véase, *Sepúlveda v. U.P.R.,* 115 D.P.R. 526, 527 (1984).

El estatuto define *"área de estacionamiento público"* como "*cualquier local, solar o área que se utilice por cualquier persona para permitir que en el mismo se estacionen vehículos de motor mediante el pago de alguna cantidad de dinero.*" 23 L.P.R.A. sec. 806(d).

El estatuto distingue, además, entre aquellos estacionamientos públicos que operan con un ánimo directo de lucro y aquéllos que son operados con un "*ánimo indirecto de lucro.*"

Los primeros están cubiertos por todas las disposiciones de la Ley y responden como depositarios por las pérdidas de los vehículos. 23 L.P.R.A. sec. 812; *Acevedo v. Plaza Las Américas, Inc.,* 109 D.P.R. 311, 314 (1980). Esto es, dichas entidades responden por las pérdidas ocasionadas por el hurto del vehículo, independientemente de su negligencia. *Flores v. Meyers Bros. of P.R., Inc.,* 101 D.P.R. 689, 700 (1973); *Dávila v. International Parking Co.,* 91 D.P.R. 203, 208 (1964); *Rivera v. San Juan Racing Assoc., Inc.,* 90 D.P.R. 414,

425 (1964).

Los negocios que operan meramente con ánimo indirecto de lucro, por el contrario, quedan exentos de la aplicación de la mayoría de las disposiciones de la Ley, excepto aquella que les obliga a mantener un seguro contra las pérdidas sufridas por los usuarios. 23 L.P.R.A. sec. 818.

En este tipo de negocios, ha explicado el Tribunal Supremo de Puerto Rico, *"la actividad del área de estacionamiento es una de carácter accesorio, como servicio incidental a la actividad real del negocio principal. Aunque de la operación total se derive indirectamente cierto lucro, no representa el negocio principal del operador, sino que opera esencialmente como un servicio para conveniencia de los parroquianos de otro negocio operado en los alrededores y que constituye el negocio principal del dueño del estacionamiento."* Acevedo v. Plaza Las Américas, Inc., 109 D.P.R. __, a la pág. 314.

En este tipo de caso, el operador no responde por el hurto del vehículo, salvo que se demuestre que hubiera mediado negligencia de su parte, conforme al principio general establecido por el art. 1802 del Código Civil de Puerto Rico, 31 L.P.R.A. sec. 4151. *Id*, a la pág. 315; *Snack Center, Inc. v. Escanellas*, 104 D.P.R. 241, 243 (1975); *Guzmán v. San Juan Racing Assoc.*, 104 D.P.R. 12 0, 212 (1975); *Merced v. Adm. de Parques*, 103 D.P.R. 574, 576-577 (1975).

En la situación de autos, el Tribunal concluyó que la Universidad debía ser equiparada a un operador con ánimo indirecto de lucro, por lo que, aunque no estaba cubierta por otras disposiciones de la Ley, venía obligada a mantener un seguro para responder por el tipo de pérdidas sufridas por las apeladas, lo que no había hecho. 23 L.P.R.A. sec. 818; *Acevedo v. Plaza Las Américas, Inc.*, 109 D.P.R. a la pág. 314.

La apelante plantea que al llegar a su determinación, la distinguida Sala apelada desatendió lo resuelto por el Tribunal Supremo de Puerto Rico en *Sepúlveda v. U.P.R.*, 115 D.P.R. 526.

En Sepúlveda, se trataba de un vehículo hurtado del estacionamiento del Recinto Universitario de Mayagüez de la Universidad de Puerto Rico, cuya pérdida fue reclamada de dicha entidad. El Tribunal Supremo de Puerto Rico resolvió que la parte reclamante carecía de causa de acción por el hurto, toda vez que la Universidad *"no opera con ánimo directo ni indirecto de lucro. Siempre ha considerado sus áreas de estacionamiento como una facilidad gratuita al estudiante, de carácter privilegiado."* 115 D.P.R. __, a la pág. 527.

Por su parte, la parte apelada plantea que, según se desprende del récord, la Universidad Católica cobra por el uso de su estacionamiento. Sugiere que, a diferencia de la Universidad de Puerto Rico, que es una institución del Estado, la apelante opera con un *"ánimo indirecto de lucro"*, dentro de los fines de la Ley.

En nuestra opinión, la situación de la Universidad Católica es efectivamente equiparable a la de la Universidad de Puerto Rico, objeto de la decisión del Tribunal Supremo de Puerto Rico en *Sepúlveda v. U.P.R.* Aunque en este caso se trata de una entidad privada, no de una facilidad educativa del Estado, es evidente que su área de estacionamiento constituye más bien un privilegio para sus estudiantes que no está disponible para el público en general o aún para los visitantes a la Universidad que carezcan del sello de autorización. No se trata de un *"negocio"* de estacionamiento, ni de una operación accesoria a una actividad comercial de carácter consuetudinario, sino de una facilidad para el beneficio de los estudiantes.

Do All, en este sentido, no constituye propiamente el *"operador"* del estacionamiento, cuyo control, según hemos visto, es mantenido por la propia Universidad, sino que se trata de una compañía que provee servicios de guardia privado. Aunque la Universidad cobra una cantidad a los estudiantes para emitir el permiso de estacionamiento, se trata más bien de una suma nominal, válida para todo el período de clases, no de una tarifa por hora, que es el tipo de remuneración que contempla la Ley. 23 L.P.R.A. sec. 806(g).

En conclusión, resolvemos que la Universidad Católica no está cobijada por ninguno de los artículos de la Ley Para Regular el Negocio de Areas Para el Estacionamiento Público de Vehículos de Motor.

Lo anterior no dispone, sin embargo, de la presente controversia.

Independientemente de que no constituya un negocio de estacionamiento, al proveer una facilidad de estacionamiento para sus estudiantes, la Universidad tiene un deber de cuidado hacia éstos en cuanto a aquellos riesgos que puedan resultar previsibles, conforme al art. 1802 del Código Civil de Puerto Rico, 31 L.P.R.A. sec. 5141.

Dicho precepto, según se conoce, establece que el que por acción u omisión cause daño a otro, mediante culpa o negligencia, viene obligado a reparar el daño causado. Se añade que la imprudencia concurrente del perjudicado no exime de responsabilidad, pero conlleva la reducción de la indemnización.

Para que exista responsabilidad bajo el citado artículo 1802, es necesario que concurran los siguientes elementos: (1) un daño, (2) una acción u omisión negligente, y (3) la relación causal entre el daño y la conducta culposa o negligente. *Montalvo Feliciano v. Cruz Concepción*, 144 D.P.R. 144 (1998), **98 J.T.S. 6**, a la pág. 499; *Toro Aponte v. E.L.A.*, 142 D.P.R. __ (1997), **97 J.T.S. 18**, a la pág. 627.

El Tribunal Supremo de Puerto Rico ha aclarado que la culpa o negligencia consiste en la omisión de aquella diligencia que exija la naturaleza de la obligación, correspondiendo tal diligencia a las circunstancias de las personas, del tiempo y del lugar. La diligencia exigible en estos casos es la que correspondería ejercitar a un buen padre de familia o un hombre prudente y razonable. *Toro Aponte v. E.L.A.*, **97 J.T.S. 18**, a la pág. 627.

El deber de cuidado impone tanto la obligación de anticipar, como la de evitar, la ocurrencia de daños cuya probabilidad es razonablemente previsible, y no se limita a anticipar solamente el riesgo preciso o las consecuencias exactas de determinada conducta. *Montalvo Feliciano v. Cruz Concepción*, **98 J.T.S. 6**, a la pág. 499; *Ginés Meléndez v. Autoridad de Acueductos*, 86 D.P.R. 518, 524-525 (1962). No se responde, sin embargo, por acontecimientos que no son razonablemente previsibles. *Toro Aponte v. E.L.A.*, **97 J.T.S. 18**, a la pág. 627.

En el presente caso, tratándose de una institución educativa, el deber de cuidado de la Universidad Católica para proteger la seguridad física de sus estudiantes es mayor que en otros contextos, *Elba A.B.M. v. U.P.R.*, 125 D.P.R. 294, 311 (1990), aunque no está claro que dicho deber especial se extienda a la protección de las pertenencias de éstos.

Ahora bien, una persona no responde por todas las posibles consecuencias de sus actos, sino por aquellas que razonablemente hubieran podido preverse. En nuestro ordenamiento se utiliza la teoría de causalidad adecuada para determinar si existe la conexión necesaria entre la conducta del demandado y los daños reclamados bajo el citado art. 1802. Según dicha doctrina, no es causa toda condición sin la cual no se hubiera producido el resultado, sino la que ordinariamente lo produce según la experiencia general. *Montalvo Feliciano v. Cruz Concepción*, **98 J.T.S. 6**, a la pág. 499; *Soc. de Gananciales v. Jerónimo Corp.*, 103 D.P.R. 127, 134 (1974).

Cuando se trata, como en el presente caso, de daños ocasionados por actos criminales de un tercero, es necesario establecer que los mismos eran anticipables, previo a evaluar la razonabilidad de las medidas tomadas u omitidas por el causante. Se debe considerar, en este contexto, la naturaleza específica de la actividad envuelta, así como la ocurrencia de otros actos delictivos anteriores que sean o debieran ser conocidos por el demandado. *J.A.D.M. v. Centro Com. Plaza Carolina*, 132 D.P.R. 785, 801 (1993).

De otro modo, no cabe imponer responsabilidad a una parte por su omisión de prever una actuación

criminal de un tercero. *Estremera v. Inmobiliaria Rac, Inc.*, 109 D.P.R. 852, 857 (1980).

En el caso de autos, hemos examinado el récord. Encontramos que el mismo está carente de prueba que tendiera a sugerir la probabilidad de que el vehículo de la apelada podía ser hurtado y/o que permita evaluar si las medidas tomadas por la Universidad para prevenir lo anterior fueron insuficientes. La parte apelada no acompañó prueba sobre otras querellas similares presentadas con relación a otros hurtos anteriores en el área de estacionamiento. Tampoco se ofrecieron detalles en el juicio sobre la configuración y circunstancias del lugar que permitieran juzgar que el mismo invitaba este tipo de peligro.

El único elemento, que permitiría inferir la existencia de negligencia por parte de la apelante, lo fue el testimonio de la apelada Gutiérrez de que había estacionado su automóvil "*al lado de la cabina del guardia*". Dicho testimonio no ofreció detalle alguno sobre la distancia envuelta, la visibilidad, el grado de iluminación o cualquier otra circunstancia existente en el lugar que apoye la conclusión de que el hurto no hubiera ocurrido de no haber sido por la negligencia del guadia. En ausencia de estos elementos particulariantes, entendemos que no cabe sostener la determinación del Tribunal.

Las Universidades no son aseguradoras de las pertenencias de sus estudiantes. *Elba A.B.M. v. U.P.R.*, 125 D.P.R. __, a la pág. 320. La norma que aconseja deferencia a la apreciación de la prueba realizada por el Tribunal de Primera Instancia no confiere de credenciales de inmunidad a dicho foro frente a la función revisora del tribunal apelativo. *Vda. de Morales v. De Jesús Toro*, 107 D.P.R. 826, 829 (1978).

Consideramos que, a la luz de la insuficiencia señalada del récord en el presente caso, la determinación del Tribunal de Primera Instancia de que la parte apelante actuó con negligencia no representa el balance más racional y justiciero de la prueba. Compárese el caso de autos con *P. Ricancars, Inc. v. Plaza Las Américas*, 121 D.P.R. 238 (1988).

Por los fundamentos expresados, se revoca la sentencia apelada.

El Juez Ortiz Carrión concurre con el resultado.

Lo pronunció el Tribunal y lo certifica la señora Secretaria General.

Aida Ileana Oquendo Graulau
Secretaria General